IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CONSTEMECKA RUSSELL, individually and on behalf of others similarly situated,<br>      Plaintiff,<br><br>vs.<br><br>ILLINOIS BELL TELEPHONE CO.,<br>      Defendant. | Case No. 08 C 1871 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Constemecka Russell, a former call center employee of Illinois Bell Telephone Company, has sued Illinois Bell under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 206 & 207, seeking unpaid overtime wages and other relief. Before the Court is plaintiff's motion under section 216(b) of the FLSA in which she seeks an order conditionally certifying this case as a collective action under the FLSA and approving a notice to be sent to other similarly situated employees, notifying them of the pendency of the case and their right to join as plaintiffs. For the following reasons, the Court grants Russell's motion.

### Background

Russell was a Sales and Service Associate at Illinois Bell's consumer call center in Arlington Heights, Illinois from June 2003 to February 2008. For her work, which involved taking incoming calls from customers regarding service, equipment, and billing

1

issues, as well as selling AT&T equipment, services and upgrades, Russell received a base hourly wage, commissions, and bonuses. Including an unpaid one-hour lunch break and two paid fifteen-minute rest breaks, her scheduled shift, or "tour", was nine hours long. Russell alleges, however, that she and other similarly situated Illinois Bell call center employees were required to perform unpaid work before and after their scheduled shifts and during meal and rest breaks. For example, Russell had to log on to her computer and open several software applications in advance of each shift, a process that took several minutes. At the end of the shift, she had to log out of the programs and the computer. During lunch and rest breaks, she had to fill customer orders and perform other tasks to meet quotas that the company established. She estimates that she performed between fifteen and sixty minutes of unpaid work a day.

The FLSA entitles hourly employees to receive one and one-half times their regular rate of pay for each hour worked above forty hours per week. *See* 29 U.S.C. § 207. Russell alleges that in some instances, if their work had been properly credited, she and other hourly employees would have been entitled to overtime pay at one and one-half their regular hourly rate.

Russell proposes to send notice about the pendency of the case to all current and former hourly employees of defendant's call centers in Arlington Heights, Chicago, Rock Island, and Oak Brook "who worked in sales, service and in similar positions" during the past three years and who did not receive pay "for time spent working off-the-clock performing tasks before and/or after their scheduled shifts and during their unpaid breaks." Pl. Mot., Ex. 1 at 1. Specifically, Russell seeks to send notice to persons working in a customer service or sales capacity under any of the following titles: "Sales

2

and Service Consultant"; "Sales Consultant"; "Sales Associate"; "Universal Sales Consultant"; "Sales and Service Representative"; "Customer Service Representative"; "Sales and Customer Service Associate"; "Retention Service Agent"; "Collection Specialist"; and "Inside Sales Representative." *See* Compl. ¶ 7.

Since the filing of this lawsuit, a number of additional call center employees have signed forms consenting to be plaintiffs. They are: Lakenya Barginear, Joel D. Berger, Kevin Blanchette, Antionette DuBose-Norwood, Shelia Edwards, John Gaynor, Christine Grace, Tyshia Gray, Rosalyn Gully, Howard Hunter, Maria L. Ignacio, Geraldine A. Jacoby, Jeanette Johnson, Kathleen Kreiman, Jackie LaMarr, Darlene McMillan, Dernise Miles, Denise Mims, Cheryl Moten, Carmen Pearson, Bryant Phillips, Angela Perry, Courtney Porter, Sheila Shapiro, David Simmons, Frances Swinney, Heidi Terdic, Reanika Thomas, Tony M. Thomas, Annette B. Threat, Bryent Tillman, LaKisha Vance, Claude W. Van Horn, Doretta Wagner, Stephanie Ward, Michael Watson, and Shapearl Wells. Tyshia Gray subsequently withdrew from the case.

## Discussion

Under the FLSA, plaintiffs may bring a collective action on behalf of themselves "and other employees similarly situated" to recover unpaid overtime compensation. 29 U.S.C. § 216(b). Although the Seventh Circuit has specified the procedure courts should employ to decide the certification and notice issues, collective FLSA actions in this district generally proceed under a two-step process. *See Garcia v. Salamanca Grp., Ltd.*, No. 07 C 4665, 2008 WL 818632, at * 2 (N.D. Ill. Mar. 24, 2008) (collecting cases). First, the plaintiff must show that there are similarly situated employees who

are potential claimants. *Mielke v. Laidlaw Transit, Inc.*, 313 F. Supp. 2d 759, 762 (N.D. Ill. 2004). To do this, the plaintiff must make "a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Flores v. Lifeway Foods, Inc.*, 289 F. Supp. 2d 1042, 1045 (N.D. Ill. 2003) (citing *Taillon v. Kohler Rental Power, Inc.*, No. 02 C 8882, 2003 WL 2006593, at *1 (N.D. Ill. Apr. 29, 2003)). Courts use a "lenient interpretation" of the term "similarly situated" in determining whether a plaintiff meets this burden. *Id.* If the plaintiff makes the requisite "modest factual showing," the Court may allow notice of the case to be sent to the similarly situated employees, who then have the opportunity to opt in as plaintiffs. *See Heckler v. DK Funding, LLC*, 502 F. Supp. 2d 777, 779 (N.D. Ill. 2007).

In the second step, following the completion of the opt-in process and further discovery, the defendant may ask the Court to "reevaluate the conditional certification 'to determine whether there is sufficient similarity between the named and opt-in plaintiffs to allow the matter to proceed to trial on a collective basis.'" *Jirak v. Abbott Labs., Inc.*, No. 07 C 3626, 2008 WL 2812553, at *2 (N.D. Ill. Jul. 22, 2008) (quoting *Heckler*, 502 F. Supp. 2d at 779). If the Court determines that such similarities do not exist, it may revoke the conditional certification.

   1.   **Conditional certification**

Russell argues that conditional certification is appropriate because all of the individuals to whom she seeks to provide notice perform similar job duties and were subject to the same common policy or plan of Illinois Bell that denied them pay for pre-

4

shift and post-shift work as well as work performed during breaks. Russell also contends that conditional certification would allow the efficient resolution of "identical issues of fact and law" and serve the interest of judicial economy by "limit[ing] the proliferation of multiple lawsuits." Pl. Mot. ¶ 16.

Illinois Bell has raised two main objections to plaintiff's motion. First, it argues that Russell has offered no admissible evidence that she and the putative notice recipients were victims of an unlawful, company-wide policy or practice. Second, Illinois Bell argues that the putative notice recipients are not similarly situated because they had different job duties and worked in different call centers with individualized timekeeping and computer system practices.

### a. Evidence of company-wide policy or practice

Illinois Bell argues that Russell's theory of liability rests entirely on her allegation that the company paid its hourly call center employees only for time worked while logged into the phone system. It argues that because it did not use the phone logs for that purpose, Russell cannot establish the required company-wide policy or practice.[1] But this was not, as Illinois Bell contends, "the sole basis on which she moved for conditional certification, as well as the only alleged common unlawful policy or plan." Def. Surreply at 2. In her complaint, Russell alleged that Illinois Bell paid her and other similarly situated call center employees only for time worked while logged into the phone system rather than for all the hours they worked. But she also claimed that

---

[1] Defendant maintains that it uses employees' phone logs to track their attendance and their "adherence" to their designated schedules but not to report time to payroll. *See., e.g.*, Kim Decl., Def. Ex. 11 ¶¶ 10-11.

Illinois Bell "knowingly required Plaintiffs [sic] and the similarly situated individuals to perform unpaid work before and after logging into the phone system, including but not limited to booting-up computers, initializing several software programs and performing customer call-backs." Compl. ¶ 8. Additionally, Russell alleged that Illinois Bell was aware that she and the similarly situated employees performed unpaid work during meal and rest breaks. And in Russell's motion for conditional certification, she identified the common plan or practice this way: "Defendant knowingly only paid [employees] for the time they were scheduled to work and be on the phones, and denied them pay for work they performed when they were not logged into the phones *or* that exceeded their scheduled shift *and* for work they performed during their unpaid breaks." Pl. Mot. at 15 (emphasis added).

The affidavits from other employees that Russell submitted with her motion made substantially the same allegations. Each one stated, "[B]efore my shift starts each day, I need to log on to the computer and open up numerous software applications. . . I also have to log out of these programs after I log off the phone each day." *See, e.g.*, Gaynor Decl., Pl. Ex. 3 ¶ 7. The affiants also stated that they worked during breaks "to meet the minimum production standards established by the company" and that they did not receive compensation for time worked before and after shifts and during breaks. *See id.*, ¶¶ 7, 8.

Illinois Bell's argument that Russell's theory of liability rested only on the company's telephone system serving as an employee time clock for payroll purposes is unfounded. From the inception of this suit, Russell has clearly alleged (and the supporting affidavits have confirmed) the time periods she and the similarly situated

6

employees were expected to perform additional work: before and after their shifts began and ended and during meal and rest breaks. As the Court understands it, Russell's theory of liability has always been that Illinois Bell required, but did not provide overtime compensation for, pre-shift and post-shift computer log-ons and log-offs and extra work during lunch and rest breaks to meet required quotas. Russell's allegations hinged as much on this company practice, common to the four named call centers, as on Illinois Bell's alleged use of the phone system to calculate pay.[2]

Illinois Bell objects that without the phone system theory, Russell cannot provide evidence of a common policy or practice violating the FLSA, because the company's timekeeping practices "provid[e] for routine and automatic payment of all tour time as well as the reporting and payment of all time worked outside of scheduled tours." Def. Resp. at 14. Illinois Bell's arguments in this regard can best be described as defenses on the merits.[3] It asserts, for example, that if Russell and others had performed work before or after their shifts or during breaks, they could have filled out overtime slips or

---

[2] Illinois Bell argues that the affidavits Russell has submitted are "boilerplate" and "largely inadmissible" and that the Court should not consider them as part of this motion. Def. Resp. at 20. Because Russell discarded her phone-system-based compensation theory, the Court did not consider it. The argument that the Court should disregard the portions of the affidavits relating to this argument is therefore moot.

[3] Illinois Bell also attempts to attack the credibility of Russell's allegations by arguing that neither she nor any of the opt-ins complained to company management or the International Brotherhood of Electrical Workers about a company-wide policy or practice of failing to pay overtime, and that this "essentially eliminates any credible possibility" of such a policy. Def. Resp. at 18. This argument gets Illinois Bell nowhere; the Court's role at this stage is not to assess any party's credibility.

7

exception requests and would have been paid if they had done so.[4]  But the mere fact that a company has a written overtime policy does not defeat conditional certification when a plaintiff provides countervailing evidence of a common policy of not paying for overtime.  *See Burch v. Qwest Comms. Intern., Inc.*, 500 F. Supp. 2d 1181, 1188 (D. Minn. 2007).  In any event, determination of the merits of the case is premature.

Illinois Bell also argues that its official rules prohibit employees from logging into their computers before the start of their shifts; it says that the fact that certain managers might operate by their own set of rules does not amount to a common policy or practice under the FLSA.  But whatever the company's official rules say, Russell's evidence suggests that something more than a rogue manager or two required the employees to log into their computers before the start of their tour so that they could log into their phones as soon as their tours began.  In fact, Mr. Gaynor, one of the opt-in plaintiffs who has worked at three different call center locations, testified that "[e]very supervisor I've ever had has always said to be ready and available at the start of my tour."  Gaynor Dep., Def. Ex. 1 at 132:7-9.

The affidavits of Berger, Hunter, Jacoby, Lamarr, Shapiro, and Swinney, which accompanied Russell's reply, state substantially the same thing.[5]  *See* Pl. Reply, Exs.

---

[4]  Illinois Bell also states that two of the opt-ins, Ms. Johnson and Ms. Wells, have admitted that the company expects them to take their scheduled 15-minute breaks and lunch break each day.  *See* Def. Exs. 2, 5.  But Ms. Wells also testified that the employees "are told to do what [they] have to do" to meet sales quotas and that as a result, they must work during many of their breaks.  *See* Wells Dep., Def. Ex. 5 at 77:22.

[5]  For that reason, the Court denies Illinois Bell's request that it disregard these affidavits.  The statements contained in them were not substantially different from those
(continued...)

8

A-F. Each affiant stated the following, or something similar: "Defendant did not restrict me from logging onto my computer or the software applications before the start of my tour. In fact, I understood that it was expected of me in order to start my scheduled tour on time and promptly assist customers who were calling in. Similarly, I could not log out of the computer systems during my tour because I had to have access to these systems until my tour ended." *See, e.g., id.*, Ex. A ¶ 6.

Russell has also presented evidence that Illinois Bell discouraged her and the other call center employees from submitting overtime forms, did not regard the time employees spent logging in to their computers as compensable, and would not allow the employees to receive overtime pay unless they worked eight or more minutes beyond their regular shift. *See, e.g.*, Pl. Reply, Ex. A ("I understood incidental overtime to only include the time I spent on incoming calls that went more than eight minutes past the end fo my scheduled tour. I was not informed that I was supposed to record my daily pre-tour and post-tour activities such as logging in and out of our computer systems, finishing up calls that were less than eight minutes past the end of my tour, filling orders, or completing paperwork. . . . Nor was I told that I would be compensated if I ended up performing these additional tasks during part of my unpaid lunch, which happened occasionally."); *see also* Gaynor Dep., Def. Ex. 1 at 222:8-9; 225:10-11, 20 (noting that the rule limiting compensable calls to those extending more than seven

---

[5](...continued)
contained in the previous affidavits, and thus Illinois Bell had adequate notice of their claims. Illinois Bell will have ample opportunity to depose the opt-in plaintiffs as the case progresses.

minutes past the end of the tour was "stated by management in the past" and that the rule "goes back to the beginning of employment, that that's always been shared. . . anywhere you go"); Wells Dep., Def. Ex. 5 at 77:18, 20-22 (stating that employees often work during their lunch breaks because they "are held accountable" and "could get fired if [they] don't make [their] sales quotas," so "[they] are told to do what [they] have to do").

In the Court's view, Russell's evidence does not merely reflect "a misunderstanding on the part of a few employees." *Cf. Adair v. Wisconsin Bell*, No. 08 C 280, slip op. at 9 (E.D. Wis. Sept. 11, 2008) (finding insufficient as evidence of a common policy or practice the allegations of three employees and stating that their misunderstanding would have to be "far more widespread" to "merit the kind of collective action plaintiffs seek to bring"). Rather, it reflects that at the very least, Illinois Bell expects that call center employees will have to perform overtime work and yet does not compensate them for it. The FLSA defines "employ" to include "to suffer or permit to work." 29 U.S.C. § 203(g). Thus, "[e]ven if overtime work is not required by an employer, but merely permitted, the FLSA may be violated if an employee is not compensated for such work she performs." *Adair*, slip. op. at 11; 29 C.F.R. § 785.13 ("In all such cases it is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them.").

Illinois Bell argues that the Court should disregard the affiants' statements about their supervisors' awareness that they were performing unpaid overtime on the ground that the statements cannot possibly be faced on personal knowledge. Ultimate

10

determination of the veracity of the affiants' statements is an issue for another day. For the present, the Court is persuaded that one reasonably can infer that a supervisor would be aware that his or her employees were performing off-the-clock work for which they were not being compensated.

In sum, there is evidence sufficient for present purposes that Illinois Bell's call center employees were subject to a common policy requiring them to work before and after their tours and during their paid breaks and that they did not receive overtime compensation for doing so.

### b. Evidence that putative notice recipients are similarly situated

Illinois Bell argues that Russell has provided insufficient evidence that she was similarly situated to employees with different job titles and employees located at other types of call centers. The Court finds somewhat puzzling the argument that Russell has failed to make a sufficient factual showing about the company's business communications services call centers, its credit and collection facilities, and its maintenance call center. Those facilities have nothing to do with the present motion; Russell seeks conditional certification only of current and former employees of Illinois Bell's consumer call centers in Arlington Heights, Chicago, Rock Island, and Oak Brook, the last of which is now closed. To the extent that Illinois Bell objects to Russell's failure to submit an affidavit from a current or former employee at the Rock Island location, the Court finds that Russell has provided sufficient evidence of a company-wide practice, through affidavits from current and former employees of the other three locations, to justify sending notice to similarly situated employees at all four locations. *See, e.g., Sherill v. Sutherland Global Servs., Inc.*, 487 F. Supp. 2d 344, 349 (finding

11

that affidavits from individuals who worked at ten of eleven call centers sufficiently described the company's uniform policy to justify sending notice to all eleven call centers).

Illinois Bell also objects that Russell's first ten affidavits all came from Service Representatives; as a result, Illinois Bell contends, Russell has provided insufficient evidence that employees with different titles were similarly situated. Courts in the Seventh Circuit have defined "similarly situated" in various ways. *See Acevedo v. Ace Coffee Bar, Inc.*, 248 F.R.D. 550, 555 (N.D. Ill. 2008). Some have found that the potential collective action participants must "perform[ ] the same type of duties as the named plaintiff." *Id.* (internal quotation marks and citations omitted). Others have found that the plaintiffs need only show that they and the potential collection action participants members "were victims of a common policy or plan that violated the law." *Id.* (internal quotation marks and citations omitted).

Illinois Bell next argues that Russell's affiants reveal no legally sufficient basis for personal knowledge of whether the co-workers they observed working off-the-clock were compensated. The Court disagrees and finds that Russell's evidence sufficiently establishes a practice in Illinois Bell's call centers of requiring overtime work and an unwritten but widespread policy of not accepting overtime pay requests for overtime segments less than eight minutes in length.

The Court has already found that Russell has provided evidence of a common policy or plan that violated the law. The potential notice recipients in this case are those whose "jobs involved sales and service to Defendant's customers" and whose "primary duty . . . was to take incoming calls from customers who wished to add or change

12

service." Pl. Mot. at 2. The fact that the affidavits Russell has submitted are all from Service Representatives, Customer Service Representatives, Sales and Service Representatives, rather from any of the other customer service and sales-related positions she seeks to include in this action, does not reflect a lack of similarity at this stage of the case. *See Jirak*, 2008 WL 2812553, at *3 ("Plaintiffs do not have to show that the potential class members [sic] have *identical* positions for conditional certification to be granted; plaintiffs can be similarly situated for purposes of the FLSA even though there are distinctions in their job titles, functions, or pay"). The potential notice recipients are those who worked at the four call centers in "sales, service, and in similar positions." *See* Pl. Proposed Notice, Ex. 1 at 1. The primary responsibilities of all those employees are receiving incoming customer calls, assisting with equipment and billing questions, and selling defendant's equipment and services. Pl. Mot. at 3. Under either "similarly situated" test, Russell has satisfied her burden. Any further arguments about dissimilarities are "more appropriately decided at step two, after it is known who the class [sic] will consist of, and after some of the factual issues can be fleshed out in discovery." *Jirak*, 2008 WL 2812553, at *4.

### 2. Judicial notice

Russell contends that judicial notice is appropriate in this case because of concerns regarding the statute of limitations and the size and geographic scope of the group of putative collective action participants. Illinois Bell responds that even if the Court grants Russell's motion to facilitate notice, the form of the proposed notice is deficient in several respects.

First, Illinois Bell argues that a non-lawyer could perceive the heading of the

notice, which bears the names of the district and magistrate judges assigned to this case, as a judicial endorsement of the claims in this case.  In "oversee[ing] the notice-giving process," the Court "must take care to avoid even the appearance of a judicial endorsement of the merits of the action."  *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 174 (1989).  For that reason, the Seventh Circuit has said that it is "improper" to order that notice go out on court letterhead with "the signature of the clerk of the court or other judicial officer" because "the judicial imprimatur is likely to be misunderstood as a representation that the suit probably has merit."  *Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578, 582 (7th Cir. 1982).

Russell's proposed notice is not on court letterhead and does not include any judicial signatures.  Although it states at the top of the first page, "United States District Court for the Northern District of Illinois," *see* Pl. Mot., Ex. 1 at 1, it also contains the full caption of the case and could not reasonably be construed as a letter from the Court.  *Cf. Jirak*, 2008 WL 2812553, at *5 (directing the plaintiff to remove the language identifying the court from the top of the notice "or, alternatively, include the entire caption of the case so that it is clear the notice is a court document and not some type of letter from the Court").  The statement appearing at the bottom of the second page of the notice in bold, all-capital letters, that "[t]he Court has taken no position about the merits of plaintiffs' claims or defendant's defenses", *see* Pl. Mot., Ex. 1 at 2, sufficiently conveys the Court's neutrality as to the merits of the action.  *Cf. Jirak*, 2008 WL 2812553, at *5 (stating that the revised notice must contain "conspicuous language stating that the Court has not taken any position on the merits of the action").

Second, Illinois Bell argues that the proposed notice is misleading because it

14

states that Russell's counsel will represent any persons who opt into the action and fails to explain that the notice recipients have the option of retaining separate counsel or bringing an individual lawsuit. The notice already contains language informing the recipients that if they "decide not to join this action [they] are free to take action on [their] own." *See* Pl. Mot., Ex. 1 at 2. Furthermore, it notifies them that if they opt-in to this action, they agree to representation by Russell's counsel. The Court therefore rejects Illinois Bell's proposed additional language.

Third, Illinois Bell argues that the notice should include a statement notifying potential plaintiffs that they may be required to sit for depositions or testify if they opt-in to the litigation. Russell does not object to such language but ask that it be "included in a reasonable location and manner. Pl. Reply at 14. The Court finds reasonable Illinois Bell's proposed language: "While the suit is proceeding, you may be required to provide information, sit for depositions, and testify in court." *See* Def. Resp. at 24 (citing *Schwed v. Gen. Elec. Co.*, 159 F.R.D. 373, 379 (N.D.N.Y. 1995)).

Russell also requests that the Court order Illinois Bell to produce an Excel spreadsheet listing the name, last known address and telephone number, dates and location of employment, last four digits of the Social Security number, and date of birth of all Illinois Bell call center employees in sales, service, and similar positions from the past three years. Illinois Bell objects only to the production of the telephone numbers and partial Social Security numbers. It argues that the Illinois Rules of Professional Conduct prohibit direct telephone solicitation of potential clients and that such unlawful solicitation is the only conceivable purpose for which Russell's counsel could need the telephone numbers. As for the partial Social Security numbers, Illinois Bell argues that

15

privacy interests weigh against releasing them.

Russell's counsel have stated to the Court that they intend to use the phone numbers only to run reverse directory searches in the event that some of the notice recipients' addresses turn out to be outdated and that they will use the partial Social Security numbers only for that same purpose and to verify actual employment by defendant.

Because Russell's interest in locating and contacting similarly situated employees outweighs the limited privacy interests in a home telephone number, the Court orders that Illinois Bell produce the requested telephone number information. *See Acevedo*, 248 F.R.D. at 554 (stating that "due process rights are more compelling than the privacy rights of potential plaintiffs' addresses and phone numbers" and that "[s]uch information is distinguishable from 'more intimate privacy interests such as compelled disclosure of medical records and personal histories'") (citation omitted). A protective order limiting the use of this information to its intended purpose will adequately address defendant's privacy concerns. *See id.* Accordingly, the Excel spreadsheet to be provided by Illinois Bell may be disseminated only among plaintiff's counsel and may be used only for the purpose of locating the current addresses of any notice recipients whose notices are returned or otherwise undelivered. The Court is unpersuaded that the partial Social Security numbers that Russell seeks are either necessary or particularly helpful, and as a result it will not require Illinois Bell to disclose that information.

**Conclusion**

For the reasons stated above, the Court grants Russell's motion for conditional

certification and judicial notice [docket no. 24].

_____
MATTHEW F. KENNELLY
United States District Judge

Date: September 15, 2008