Report on the Estimate of Unpaid Work at Illinois Bell Telephone between April
1, 2005 April 1, 2008

in Re: Constemecka Russell
vs. Illinois Bell Telephone Company
In the United States District Court, Northern District of Illinois
08CV1871

Prepared for
Nichols Kaster, PLLP

4600 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402
612-256-3288 direct
612-338-4878 fax
877-448-0492 main

Robert A. Bardwell, Ph. D.
Bardwell Consulting
4801 W. Yale Ave.
Denver, Colorado 80219
(303) 934-3851
August 5, 2009


EXHIBIT
41

# Table of Contents

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

1. Introduction and Summary of Findings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    Context of the Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    Summary of Findings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

2. Calculation of Unpaid Work Hours . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    Recording Unpaid Work Hours by Activity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    Longitudinal Database Used to Determine Unpaid Intervals . . . . . . . . . . . . . . . . . . . . 3
    Example 1 of Unpaid Work Period Tracking . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    Example 2 of Unpaid Work Period Tracking . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    Comparison With Pay Records Validated the Method of Totaling Hours . . . . . . . . . . . 5

3. Sample Estimate of Missing Time . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    Estimate of Unpaid Hours . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
        Table 1: Total Unpaid Work Hours by Activity Level . . . . . . . . . . . . . . . . . . . 6
    Data Deficiencies Hide Additional Unpaid Hours . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
        Table 2: Total Lost Unpaid Work Hours Due to Missing Data . . . . . . . . . . . . . 7
    Gaps in Data May Hide Additional Unpaid Hours . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

4. Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

5. Data and Information Sources Used . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
    Data and Documentation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Attachment 1: Glossary of Terminology of Illinois Bell Employee Tracking Systems . . . . . . . 10

Attachment 2: Activity Codes by Paid/Unpaid . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Attachment 3: Example of Typical Time-Line from Defendant's Data . . . . . . . . . . . . . . . . . 13

Attachment 4: Detailed Table of Unpaid Hours . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Attachment 5: Detailed Table of Lost Hours Due to Defects in Defendant's Data . . . . . . . . . 16

Attachment 6: Curriculum Vitae . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

©Bardwell Consulting 2009

# 1. Introduction and Summary of Findings

This report is a preliminary estimate of the unpaid hours claimed by plaintiff employees of Illinois Bell Telephone Company between April 1, 2004 and April 1, 2008. The estimation method provided in this report is sufficient to provide an accurate accounting of unpaid work time, and is appropriate for estimation of damages. Section 1 contains background information on the context of the analysis and a Summary of Findings. Section 2 explains the procedure used to determine the number of unpaid work hours. Section 3 presents the resulting totals of unpaid hours derived from available data. Finally, Section 4 provides a brief conclusion, Section 5 lists the sources of data used in the report and Section 6 addresses my qualifications and compensation.

## Context of the Analysis

This case is a collective action brought under the Fair Labor Standards Act of 1938,[1] to recover unpaid overtime compensation claimed by plaintiff and potential class members. Plaintiff Constemecka Russell was an employee at Illinois Bell Telephone Company at Arlington Heights, Illinois from June 6, 2006 through February 15, 2008.[2] This report provides a preliminary estimate of the number of unpaid hours plaintiff and opt-in plaintiffs worked during the study period, April 1, 2004 through April 1, 2008.

The proposed class includes all "similarly situated individuals who were, or are, employed by Defendant in customer service, sales, and similar positions in Defendant's call centers who were not paid for some or all of their preliminary and postliminary work activities and/or were not provided the meal and rest breaks to which they are entitled."[3] Plaintiff further claims that the defendant did not pay employees for time to log into their computers and were denied appropriate breaks due to work load.

As detailed below, defendant failed to provide useable records for almost one-quarter of the opt-in plaintiffs, and provided data with known significant gaps for those employees for whom they did provide data. In addition, the data exhibits inconsistencies that indicate many records may be missing, creating gaps throughout the provided data. These gaps would likely contribute to an underestimate of unpaid work. The nature of these data and of the analysis used to identify unpaid work hours means that each gap in the data prevents our discovering additional periods of unpaid work. This report may be revised or augmented if defendants cure the deficiencies in their data production.

## Summary of Findings

In summary, the method and results presented in this report are sufficient to provide an accurate accounting of unpaid work time, and are appropriate for estimation of damages. The method is based on all available data produced by defendant, and is shown to be consistent with defendant's

---

[1] 29 U.S.C. §§ 201 – 219.

[2] This reflects the maximum date range in plaintiff's employee data provided by defendant, so plaintiff's employment may have extended beyond this period.

[3] *Collective Action and Complaint*, page 2.

©Bardwell Consulting 2009

pay records. The principal results are:

- The estimate of unpaid work hours from defendant's data range from 141,303 to 230,785.

- Additional unpaid hours may be lost from the analysis due to defects in defendant's data. These hours are estimated at over 60,000 additional unpaid hours.

## 2. Calculation of Unpaid Work Hours

Employees at Illinois Bell or AT&T are given a set schedule. These schedules are called "tours" as in a "military tour of duty." Schedules are loaded into the tracking system Total View, reflecting the employees' schedule as planned. Employees are required to submit modifications to Schedule records. Modifications to the initial schedule are made by a Technical Assistant who enters the modifications manually into Total View from slips of paper submitted by employees. The final Total View's records are sent through the IEX interface and entered into E-Link, the payroll generation system that generates paychecks.

### Recording Unpaid Work Hours by Activity

In addition to the advanced scheduling and tracking of actual daily activities provided by Total View, the activities of employees of Illinois Bell are monitored and recorded by several additional computer systems. The analysis in this report utilizes databases from these programs provided by defendant. Employees are required to log into and out of several different data and security systems before and after work, and before and after scheduled breaks and other company activities. When available, these databases provided a detailed record of the movements and activities of employees.

I analyzed the databases provided by the Defendant to identify periods during which employees were at the work place and engaged in some recorded activity. For each of these periods, I determined wether the employee was being paid for that duration. I developed a computer program that scanned through the minute-by-minute records and tabulated unpaid periods by activity. This technique allowed the computation of the total unpaid hours for each activity.

### Longitudinal Database Used to Determine Unpaid Intervals

The first step in the analysis of defendant's databases is to merged each data table into one file which orders every event chronologically. This Chronology Table included all the data provided by defendant[4]

- Total View data

- Badge Swipe data from door entries

- RAC-F security system logs

---

[4]These systems are outlined in Attachment 1.

- WOW records of computer system login/logout events, and

- TCS records of computer system login/logout events.

By combining these data sets into a single table, they could be ordered by their time stamp to provide a method of following the sequence of events during each employees' day.

This longitudinal history file included complete event histories for every employee, limited only by the deficiencies in the data provided by defendant. I wrote a computer program to scan this file and identify gaps between events in the employees' work day where the Total View data indicated that the employee was not paid.

### Example 1 of Unpaid Work Period Tracking

For each period, the analysis classified the time by the activities that initiated and ended the gap. For example, consider this sequence:

- The first record of the day for an employee indicated that the employee performed a computer login through the TCS system at 7:30 a.m.

- The next record indicates that the employee's Total View Schedule began with an Open Activity code at 8:00 a.m.

From this pattern, our analysis records a one half-hour unpaid gap, since it occurred before a paid Total View period began. This gap is added to a counter that tracks unpaid gaps specifically for periods between a TCS Login and a Total View period.

### Example 2 of Unpaid Work Period Tracking

The first example only indirectly required that the system determine whether the period is paid or unpaid, because the period occurred at the beginning of the work day prior to any paid activities. This second example demonstrates how the paid/unpaid value of the Activity code would affect the analysis:

- A Total View record occurs at 12:00 p.m. with an Activity code of Lunch. The Total View record indicates that the duration of this activity is one hour until 1:00 pm.

- The Activity code Lunch is assigned a value of unpaid.[5] Therefore, our analysis assumes that subsequent hours are recorded as unpaid in the Total View Database.

- The next available record is a TCS Login record at 12:30 p.m. Our analysis starts recording an unpaid gap at 12:30.

- The third record is a Total View paid Activity, ending the unpaid period.

---

[5] Each Total View Scheduled record includes an Activity code. Forty-eight Activity codes were included in the Total View data. These codes were classified as paid or unpaid per Attachment 2.

• The analysis records the unpaid period that started at 12:30 p.m. ended at 1:00 p.m., adding the one-half hour of unpaid time between 12:30 and 1:00 pm to the counter for TCS Login events followed by a Total View Record.

A narrative example of the pattern in a typical day as revealed in the longitudinal file is provided in Attachment 3.

**Comparison With Pay Records Validated the Method of Totaling Hours**

This method produced test results within less than one percent of known records, verifying that it could accurately total multiple short intervals over many records and long periods. I tested the method by using it to calculate an estimate of the number of paid hours for the plaintiff over the 1.7 years covered by her records. These results were compared to the number of hours paid from payroll records for the same period. This test also validated the classification of Activities into paid and unpaid, since the method required identifying and excluding time codes for which the employee was not paid (e.g. breaks and lunch).

The total count of the hours paid generated by my method deviated less than a 0.7 percent from the hours recorded on pay records. Our analysis indicated that during the duration for which we had pay history data, the plaintiff was paid for 3,742 hours, only 26 hours less than the 3,768 hours recorded in the pay history data.

# 3. Sample Estimate of Missing Time

**Estimate of Unpaid Hours**

The method described above was applied to all data provided by defendants. The method accumulated unpaid gaps in 65 separate counters for each of the 397 employees with adequate data. The gaps were separated into two Levels: Level 1 for those that were most likely to be associated with unpaid work, and Level 2 those less likely. Tables 1 and 2 present summaries of these unpaid gaps grouped in these Levels.[6]

Table 1 combines the counter totals by the type of event that started the gap. For example, all gaps with a TCS Login event are added together. Under the assumption that TCS Login events are likely to be associated with an employee starting work, the value for the counter is included in the Level 1 hours, those most likely to contribute to unpaid work totals.

An example of unpaid hours included in Level 2 are periods that either begin or end with a Door Badge Swipe event. These periods are totaled together in Level 2 since they may be less definitely associated with unpaid work. Table 1 shows that the database provided by the defendant's records a total of 141,303 hours of Level 1 unpaid work. For the 397 employees included in Defendants database this represents an average of 356 hours per employee. On

---

[6] Tables in Attachment 4 and 5 record detailed results for all the select opt-in plaintiffs for whom defendants provided data.

average these employees worked 4,572 hours during a period covered by Defendants data. Therefore, the data indicates that on average employees worked additional unpaid hours equivalent to 7.8 percent of their paid hours.

| Table 1: Total Unpaid Work Hours by Activity Level Select Opt-In Plaintiffs With Adequate Data Production | | |
|---|---|---|
| **Starting => Ending Event** | **Level** | |
| | **1** | **2** |
| **Door to Comp** | | 30,418 |
| **Comp to Door** | | 42,537 |
| **RAC to Comp** | 64,897 | |
| **WOW In to Comp** | 63,543 | |
| **WOW Out to Comp** | | 1,309 |
| **TV Actual to Comp** | | 12,194 |
| **TV Scheduled to Comp** | | 2,719 |
| **TCS In to Comp** | 12,863 | |
| **TCS Out to Comp** | | 306 |
| **Total Unpaid Hours** | 141,303 | 89,484 |
| **Percent of Total Paid TV Hours** | 7.8% | 4.9% |

Including Level 2 hours adds an additional 89,484 unpaid work hours from the analysis, . This represents an average additional 4.9 percent unpaid work hours, relative to their paid hours.

**Data Deficiencies Hide Additional Unpaid Hours**

Gaps in data may represent additional hours of unpaid work time. Defendants provided data with 509 employee identification numbers for the opt-in plaintiffs. From these 509 opt-in plaintiffs they provided time records for only 414 employees. Of these employees 18 had inadequate or defective Total View records, preventing an analysis for those employees. Therefore,

approximately one-forth of the opt-in plaintiffs could not be included in the analysis because of deficiencies in Defendants data production.

Of the remaining 397 employees, records for most included gaps in one or more of the databases which are all required for a complete employee history. For example, the plaintiff's records started on June 6, 2006, and ended on February 15, 2008. However, plaintiff's Total View records were missing until August 23, 2006. Therefore the first six weeks could not be included in the analysis because of missing Total View records.

Table 2 summarizes these gaps in each database. The table shows the estimated additional number of unpaid work hours that may be excluded from the analysis because of missing records.

| Table 2: Total Lost Unpaid Work Hours Due to Missing Data Select Opt-In Plaintiffs With Adequate Data Production | | |
|---|---|---|
| **Missing Data** | **Level** | |
| | **1** | **2** |
| **Total View** | | 2,825 |
| **RAC** | 31,655 | |
| **WOW Login** | 17,200 | |
| **WOW Logout** | | 419 |
| **TCS Login** | 8,041 | |
| **TCS Logout** | | 189 |
| **Door/Badge Swipe** | | 11,694 |
| **Total Unpaid Hours** | 56,897 | 15,127 |

## Gaps in Data May Hide Additional Unpaid Hours

In addition to data omissions that can be identified because of gaps in the data provided, there maybe an unknown number of additional missing records which would likewise be associated with unpaid hours. For example, the plaintiff regularly arrived at work early and logged on to her computer before her first Total View record indicating paid work time. However, for many days in the records provided by defendant, no login record is recorded at all. This may indicate that login records were inconsistently recorded or provided to plaintiffs.

©Bardwell Consulting 2009

Every day that the plaintiff logs in early to her computer, but the event was not provided to us by the defendant, additional unpaid work time would be lost to our analysis. There are significant inconsistencies in all of the databases delivered except for perhaps the Total View database. This indicates that there may be substantial unpaid work time that is not included in our analysis because of deficiencies in defendant's data production. These missing hours could be included in our analysis if the defendant would provide a more complete database. Alternatively, I propose using a model of typical days to infer significant gaps, which would provide a corrected estimate of total unpaid work hours. This analysis may be produced in a subsequent report if defendant fails to augment their data.

## 4. Conclusion

In summary, the method and results presented in this report are sufficient to provide an accurate accounting of unpaid work time, and are appropriate for estimation of damages. The method is based on all available data produced by defendant, and is shown to be consistent with defendant's pay records. Section 1 lists detailed conclusions under the Summary of Findings.

## 5. Data and Information Sources Used

This report may be revised and a supplemental report submitted if additional information is provided. I have used the following information in this analysis:

**Data and Documentation**

1.  Badge swipe data for Ms. Russell, the named plaintiff: [R-NKA0029016]: records access to the building by swiping a Prox-Key badge.
2.  Available badge swipe data for the select opt-in plaintiffs: [R-0NKA0030881-R-NKA003088].
3.  Total View data for Ms. Russell: [R-NKA0030886] Provides Scheduled and Actual periods (including beginning, ending and duration times) with Activity Codes.
4.  Total View data for select opt-in plaintiffs: [R-NKA0031253].
5.  WOW login/logout data for Ms. Russell [R-NKA033829] Computer application login/logout records.
6.  WOW login/logout data for select opt-in plaintiffs: [R-NKA0031254-R-NKA0031255 and R-NKA0033829].
7.  TCS login/logout data: [R-NKA0031254-R-NKA0031255 and R-NKA0033829] Computer application login/logout records.
8.  RAC-F data for Ms. Russell: [R-NKA0030885]: RAC-F provides security services for the network server system, recording access to applications requiring a password.
9.  RAC-F data for select opt-in plaintiffs: [R-NKA0030885,R-NKA0034932-R-NKA0034957].
10. Employee payroll history

11.  Letter from David E. Schlesinger to Andy Bardwell, May 1, 2009.
12.  Letter from William C. Barker at Paul Hastings to David E. Schlesinger at Nichols Kaster, January 29, 2009: RAC-F data description.
13.  Letter from Leslie Dent at Paul Hastings to David Schlesinger at Nichols Kaster, April 27, 2009.
14.  Letter from Erika Patrick at Paul Hastings to David Schlesinger at Nichols Kaster, July 13, 2009.
15.  Supplemental Total View data for Geraldine Jacoby GJ2623, Tramere Millbrook TM3631, Terri Clair TC2348, and Helen Patten HJ1352.
16.  Letter from Erika Patrick at Paul Hastings, June 12, 2009 describing data columns.
17.  Collective Action Complaint.
18.  Depositions of Barbara Pasternak - Technical Assistant - January 28, 2009.
19.  Depositions of Michelle Zollman - Executive Director of Payroll Services for all of AT&T - April 29, 2009.
20.  Depositions of Kim Kovacich - Business Manager I - January 28, 2009.
21.  Affidavit of David E. Schlesinger dated April 16, 2009, including excerpts of from opt-in plaintiff depositions.

## 6. Consultant Background

I have been retained as an expert witness in this case. I possess a Ph.D. in Mathematical Statistics and have been endorsed as an expert in the field of statistics. I have been retained by plaintiffs and defendants to perform statistical evaluations evaluation of employment practices, and have testified as an expert in the area of statistics in United States District Court for the District of Colorado, United States District Court, Nevada, and the Circuit Court of the Sixth Judicial Circuit, Pinellas County, Florida. My curriculum vitae is attached. Cases in which I have testified as an expert at trial or by deposition within the preceding four years are indicated in my curriculum vitae in bold and are bulleted (▶). My publications in the previous ten years are listed in my curriculum vitae.

My hourly rates are $350 per hour for testimony and preparation, $250 for consultation and research.

Robert A. Bardwell, Ph.D.

## Attachment 1: Glossary of Terminology of Illinois Bell Employee Tracking Systems

| | |
|---|---|
| Total View (TVI): | TVI: Total View Interface: a scheduling system for maintaining and managing the work force in the call centers - shows the schedule they are supposed to work but Technical Assistants enter the actual time. Zollman Deposition, line 9 |
| Tours | Employees pick their "tours" which is a schedule on this system, quarterly |
| Deviation Forms | Actual Time recorded by a slip of paper that is entered Manually by a TA. Kovacich Deposition, line 11. |
| Technical Assistant (TA): | This person monitors variations in schedules also known as "Group Time Recorders". Zollman Deposition, lines 16-17 |
| IEX/TotalView | Interfaces with Total View and sends information to E-Link. Pasternak Deposition, line 23 |
| JOBINIT | Signifies that a user tried to sign onto one of the systems for which RAC-F verifies log in data. Paul Hastings letter to NKA, dated January 29, 2009 |
| E-Link | Payroll program. Pasternak Deposition, section 22, lines 2-3 |
| CentreVu (the "Switch")/Avaya | Records The log-in time and the log-out time for breaks, lunch, end of tour, beginning of tour. Pasternak Deposition, section 16, lines 11-12 |
| CTI: (The switch) | (SIT/SOT Report) Interface to the phone program (CentreVu); logs the agent into the "Switch" - this allows the agents to see customer information. Kovacich Deposition, section 16, lines 7-9 |
| WOW | Wireless Ordering Wizard: PC Monitoring System working with adding wireless service to accounts. Kovacich Deposition, section 52, lines 7-8 |
| POET | Similar to WOW but instead of wireless it's for Selling Dish satellite and TV services. Kovachich Deposition, section 52, lines 8-9 |
| Tours | The name of the schedule that the agent requests and/or work and are assigned to a Coach, or supervisor. Pasternak Depositions, section 10, lines 6-7 |
| RAC-F | RAC-F provides security services for the network server system. When an application that requires a password is accessed, the authentication of that password is logged by RAC-F, Paul Hastings letter to NKA, dated January 29, 2009 |
| TCS | TCS is one of the applications that has its own user ID type of formatting, which is then internally associated with that particular person it's assigned to. Kovacich Deposition, Section 40 , lines 15-17 |

## Attachment 2:  Activity Codes by Paid/Unpaid

| Activity Code | Paid/Unpaid |
|---|---|
| Absence-not paid | Unpaid |
| Absence-paid | Paid |
| ACT Training | Paid |
| Break | Unpaid |
| Break Overtime Paid | Paid |
| Closed Key Order Wrk | Paid |
| Company Activity | Paid |
| Continuation Trng | Paid |
| Customer Skills Trng | Paid |
| Disability | Paid |
| Disability/FMLA | Paid |
| Dismissal/resign | Paid |
| Emp Dev - Closed | Paid |
| Emp req not paid | Unpaid |
| EWD not paid | Unpaid |
| EWD paid | Paid |
| Fire Drill/Emergency | Paid |
| Flex-Time Made Up | Paid |
| Flex-Time Off | Paid |
| FlexTime MadeUp-Clsd | Paid |
| Floating holiday | Paid |
| FMLA | Paid |
| FMLU | Paid |
| Hol - Off | Paid |
| Hol - Open | Paid |
| Huddle | Paid |
| Learn Session Trng | Paid |
| Lunch | Unpaid |
| Meeting | Paid |
| MP Training | Paid |
| Open Time | Paid |
| OT-Mandatory-Open | Paid |
| OT-Mandatroy-Closed | Paid |
| Outage | Paid |
| Overtime closed | Paid |
| Overtime No Show | Unpaid |
| Overtime open | Paid |
| PIP Coverage | Paid |
| Preplanned Devo | Paid |
| Sick-full tour-nt pd | Unpaid |
| Sick-full tour-paid | Paid |
| Sick-part tour-paid | Paid |
| Spcl proj-avi | Paid |
| Suspension | Paid |
| Tardy-paid | Paid |
| Unscheduled | Paid |
| Vacation-current | Paid |
| XMAS 2006 FH | Paid |

©Bardwell Consulting 2009

### Attachment 3:   Example of Typical Time-Line from Defendant's Data

8:00 - 8:30 - arrive, log in etc.

8:00 - 10:07 - Open time on the phones in TotalView.

10:07: She takes a bath-room break, she locks her computer and enters the break into TVI if it is outside of her scheduled time, she logs out of her phone system (CenterVu)

10:07 - 10:19: Break time

(Original schedule says: 10:00 - 10:15 am)

10:19: She logs back into her phone and computer.

10:20-:25: She gets back into "open time" with TVI and CenterVu

10:25 - 12:15: She is on the phone constantly.

12:15 - 12:20: She locks computer and logs out of the phone etc.

12:21: She walks out of the Front Door of Arlington Heights IB Facility

12:21 - 12:55: She takes lunch, assuming a one hour break for lunch she has missed 30 minutes of her lunch break (assuming it's an hour) because she makes up time for the late call.

12:55: She walks back into the Front door of the Arlington Heights IB Facility, swipes card

12:56 - 1:00 - she logs back into CenterVu and TotalView

1:03: She takes an incoming call

1:15: She gets a message about a training session she should take today

1:30: She locks computer and phone system to go to training

1:35: She arrives at training, this is "closed Time now"

1:40-3:00  She is in training

3:00 - 3:15  She takes a break between training and returning to the call center.

3:17: She arrives at her cubicle again and logs into CenterVu and Total View.

3:20: She takes calls until 4:00 pm

4:00 - 4:15: She has a meeting about the training.  (Closed paid time)

4:15 - 5:00: She takes calls except the last one runs long.

5:00 - 5:30: She gets "stuck" on a call with a customer

**Attachment 4:   Detailed Table of Unpaid Hours**

**Attachment 5: Detailed Table of Lost Hours Due to Defects in Defendant's Data**

## Attachment 6: Curriculum Vitae

**PERSONAL:**

ROBERT A. BARDWELL

4801 W. Yale Ave.

Denver, Colorado 80219

(303) 934-3851

**EDUCATION:**

| | | | |
|---|---|---|---|
| University of Colorado, Boulder | Ph.D. | Mathematics | 1985 – 1989 |
| University of Colorado, Denver | B.A. | Philosophy | 1981 – 1982 |
| University of Chicago | | | 1969 – 1971 |

**PROFESSIONAL EXPERIENCE:**

| | |
|---|---|
| Statistical consulting | 1989 – present |
| University of Colorado instructor and teaching assistant | 1985 – 1989 |
| Research, consulting and statistical programming | 1976 – 1986 |

**PUBLICATIONS:**

- Bardwell, Robert A., Paul Klite, and Jason Salzman. "Local TV News: Getting Away with Murder." *Harvard International Journal of Press/Politics*, 2(2): 102-112 (1997).
- Max, Wendy, Dorothy P. Rice, Eric Finkelstein, Robert A. Bardwell, Steven Leadbetter. "The Economic Toll of Intimate Partner Violence against Women in the United States." *Violence and Victims*, 19 (3) (June 2004).

**RESEARCH, CONSULTING, AND STATISTICAL PROGRAMMING:**

▶ Stephen R. Bruce, Washington, D.C., 2009 -

Retained and **Deposed** as expert witness for plaintiffs claiming violation of the ADEA and ERISA by replacing a defined benefit retirement plan with a cash balance plan in a manner that freezes the benefits of older, longer-service employees during a "wearaway" period, in re Wade. E. Jensen and Donald D. Goff, individually and on behalf of all others similarly situated, v. Solvay Chemicals, Inc., Solvay America, Inc., Solvay America Companies Pension Plan, Civil Action No. 06-CV-273 (ABJ/WCB), United States District Court, District of Wyoming.

▶ Stephen R. Bruce, Washington, D.C., 2008 -

Retained and **Deposed** as expert witness for plaintiffs claiming violation of the ADEA and ERISA by replacing a defined benefit retirement plan with a cash balance plan in a manner that freezes the benefits of older, longer-service employees during a "wearaway" period, in re Phillip C. Engers, Warren J. McFall, Donald G. Noerr, and Gerald Smit, individually and on behalf of all others similarly situated, v. AT&T Corporation and AT&T Management Pension Plan, Civil Action No. 98-CV-3660 (SRC/CCC), United States District Court, District of New Jersey (Newark).

● Hoskin, Farina & Kampf, P.C., Grand Junction, Colorado, 2008

Retained as expert witness for defendants to rebut claim of age discrimination in hiring and compensation of teachers in the Mesa County Valley School District from 2001 to 2008 in Re: Phillips v. Mesa County Valley School District No. 51,Case No.: 2007cv505, Mesa County Court, Colorado.

▶ Stephen R. Bruce, Washington, D.C., 2008 -

Retained and **Deposed** as expert witness for plaintiffs claiming violation of the ADEA and ERISA by replacing a defined benefit retirement plan with a cash balance plan in a manner that freezes the benefits of older, longer-service employees during a "wearaway" period, in re Phillip C. Engers, Warren J. McFall, Donald G. Noerr, and Gerald Smit, individually and on behalf of all others similarly situated, v. AT&T Corporation

and AT&T Management Pension Plan, Civil Action No. 98-CV-3660 (SRC/CCC), United States District Court, District of New Jersey (Newark).

- Governor's Energy Office, Colorado, 2008

Received grant to build a commercial version of the OptiMiser software developed by Bardwell Consulting. OptiMiser provides economic and engineering analysis of building retrofit packages, integrating efficiency measures and renewable energy technologies. Financial tools include present value analysis of benefit-cost ratios, internal rate of return, and years to positive cash flow. OptiMiser creates and evaluates a full range of near-optimal solutions for energy retrofits, offering a flexible and efficient tool for the energy analyst, minimizing required data entry and fully integrating renewable energy technologies.

- Glustrom and LaPlaca, Denver, Colorado, 2008

Submitted testimony on existing utility incentives and the regulatory structure before the Public Utilities Commission of the State of Colorado, Docket No. 08I-113EG.

▶ Joseph M. Sellers, Cohen, Milstein, Hausfeld & Toll P.L.L.P., New York, 2008 -

Retained and **deposed** for plaintiffs regarding the impact of underwriting on black applicants in re Patricia Amos, et al. v. GEICO Corporation, et al., Civil Action No. 06-cv-1281 (RHK/JSM), United States District Court, District of Minnesota.

Glustrom and LaPlaca, Denver, Colorado, 2007-8

Created econometric models of electrical generating resources demonstrating the impact on levelized costs of modeling assumptions. Submitted written testimony and **testified** in PUC hearings re: (1) models showing improper resource selection resulting from use of high discount rates in present value modeling; (2) a statistical decomposition of error in Energy Information Administration forecasts of natural gas showing high levels of bias; (3) an alternative forecast of natural gas prices based on petroleum costs and demand and production forecasts; and (4) Monte Carlo modeling of levelized costs demonstrating the risk associated with resources from escalating fuel, $CO_2$ and water costs, poorly monetized costs of other emissions, and escalation of capital costs for IGCC and nuclear resources. Submitted Answer testimony, Cross-Answer testimony, oral testimony, and material for a Statement of Position in Hearings before the Public Utilities Commission of the State of Colorado in the application by the Public Service Company of Colorado for Approval of its 2007 Colorado Resource Plan, Docket No. 07A-447E.

- Nichols Kaster & Anderson, PLLP, Minneapolis, Minnesota, 2007-8

Retained to identify potential Muslim class members using custom Muslim name identification program.

▶ Stephen R. Bruce, Washington, D.C., 2007 -

Retained and **Deposed** as expert witness for plaintiffs claiming violation of the ADEA and ERISA by replacing a defined benefit retirement plan with a cash balance plan in a manner that freezes the benefits of older, longer-service employees during a "wear-away" period, in re Wayne Tomlinson, et al. v. El Paso Corporation and El Paso Pension Plan, Civil Action No. 4-cv-02686-WDM-CBS, United States District Court, for the District of Colorado.

- Minami Tamaki LLP, San Francisco, California, 2007-8

Retained as expert witness for plaintiffs in race discrimination in hiring class action, in re Albert Crews et al. v. Cisco Systems, United States District Court, Northern District of California.

- Hagens Berman Sobol Shapiro Llpreko LLP, Los Angeles, 2007-

Retained as expert witness by plaintiffs in California overtime employment class action, to testify regarding the appropriate use of sampling to estimate damages and provide

evidence of commonality in re <u>Randall et al. v. Costco Wholesale Corporation</u>, Case No.: BC 296369, California Superior Court.

- REKO LLP, Toronto, Ontario, 2007-

  Retained as expert witness by plaintiffs in nationwide overtime employment class action, to design a stratified random sample to estimate damages and provide evidence of commonality in re <u>Fresco v. Canadian Imperial Bank of Commerce</u>, File No. 07-W-334113PC2, Ontario Superior Court, Canada.

- Institute for Environmental Solutions, Denver, 2007 -

  Retained as sampling and research design consultant on *The Tree Project*, a community-scale research program to assess the environmental impact of urban tree cover. Assisted with the integration of available scientific tools, and the development of new measurement protocols, and consulted on the design of the spacial sampling plan for the initial survey in Golden, Colorado.

- FIMAC Solutions, Inc., Denver, 2007 -

  Retained to research and develop econometric analysis of core deposits for banking institutions. Developed a suite of analytic tools that, (1) provide less conservative projections of the decay rate of non-maturity deposits than those provided by regulatory agencies; (2) generate more accurate forecasts of account balances; and (3) include an index to evaluate risk form core deposit decline. These analytic tools employ appropriate times series and hazard rate analyses.

- Arius Energy, LLC, Denver, 2006 -

  Designed and developed web-based tool for individuals and communities to track their carbon footprint and energy consumption.

- Federal Election Commission, 2006-7

  Designed and developed sampling program used by the Federal Election Commission to monitor contributions and expenditures for all Federal elections. Program was developed as a web-based application that can also run on auditors' notebook computers. Program designs, draws and evaluates samples of transactions for audit. All results were tested against the American Institute of Certified Public Accountant statistical auditing programs.

- John Robert Holland, Denver, Colorado, 2007

  Retained as expert witness by plaintiffs to evaluate the adverse impact of treatments for bed bug infestations on persons with disabilities in re <u>Charlotte McConnell, Willard McConnell and John McConnell v. The Tower at Speer, LLC, Marcy Payne, and Libby Burney</u>, District Court, City and County of Denver, Colorado.

- Nichols Kaster & Anderson, PLLP, Minneapolis, Minnesota, 2006-7

  Retained as expert witness by plaintiffs to evaluate the adverse impact of hiring, compensation, discipline and terminations decisions on Hispanic employees in re <u>Mendez et all v. Faribault Foods, Inc. and The Work Connection</u>, United States District Court, Minnesota.

- Cornish and Dell'Olio, Colorado Springs, Colorado, 2006-

  Retained as expert witness by plaintiff to evaluate the disparate impact of testing and terminations decisions on the women in the training academy for the Colorado Springs Fire Department, in re <u>Karyn S. Palgut v. The City of Colorado Springs</u>, Civil Action No. 06-cv-01142-WDM-MJW, United States District Court, Colorado.

- Legal Aid Society of Minneapolis, Minneapolis, Minnesota, 2006

  Retained as expert witness by plaintiffs to evaluate the adverse impact of alternative pre-employment tests on Minneapolis Fire Cadet Selection Process; demonstrated adverse impact and proposed the remedy which was implemented, of augmenting pool of Stage II candidates with 55% additional protected class applicants.

- Killmer, Lane & Newman, LLP, Denver, Colorado, 2006-

Retained as expert witness by plaintiffs to evaluate the impact of gender on utilization, hiring and promotions at Car Toys, Inc., in re <u>Monica Britton, et al. v. Car Toys, Inc., and Bruce Cameron</u>, Civil Action No. 05-CV-00726-WYD-PAC, United States District Court, Colorado.

▣ Shores, Williamson & Ohaebosim, LLC, Wichita, Kansas, 2006

**Deposed** as expert witness by plaintiffs to evaluate the impact of gender on workforce utilization, promotions, terminations, and compensation at The Fresh Market, Inc., in re <u>Terrence Mcfadgon, Terra Mukes, Gloria Keith, and Starika Smith v. The Fresh Market, Inc.</u>, Case No.: 05-2151, United States District Court, Western District of Tennessee.

● University of Colorado Health Sciences Center, Denver, Colorado, 2005-

Member of research team for *A Study of Immigrant Housing Conditions in Commerce City, Colorado*, to assess housing-related health risks affecting recent immigrant families with children. Responsible for construction of housing inventory and GIS profile of the study area; construction of the sample frame; design the sample of participating households; supervision of survey analysis, compilation of survey estimates, and contribution to resulting publications.

▣ McKenna Long & Aldridge LLP, Denver; Seyfarth Shaw LLP, Washington, D.C., 2005-

**Deposed** as expert witness for defendants on the impact of age on separations at the Hershey Company, in re <u>Montagne, et al. v. The Hershey Company</u>, Case No.: 04-cv-1881-WYD-BNB, United States District Court, Colorado.

The Carey Law Firm, Colorado Springs, Colorado, 2005-

Retained, **deposed** and **testified** as expert witness by plaintiffs to estimate attorneys fees retained by the Colorado in Supplemental Security Income (SSI) Reimbursements, 1997 - 2005, in re <u>Chad Martinez and Larry King v. Colorado Department of Human Services and Otero County Department of Human Services</u>, Case No.: 02 CV 1066, District Court, City and County of Denver, Colorado.

● Cayman Islands Real Estate Brokers Association, Grand Cayman, Cayman Islands, 2005-2006

Retained to conduct an econometric analysis of the impact of stamp duty rates on real estate transaction volume and value in the Cayman Islands from 1990 through 2004.

● Shores, Williamson & Ohaebosim, LLC, Wichita, Kansas, 2005-

Retained as expert witness by plaintiffs to evaluate the impact of gender on workforce utilization, promotions, terminations, and compensation at Wichita Police Department in re <u>Greta Semsroth, et al. v. City of Wichita, and Chief Norman Williams</u>, Case No. 04-1245-MLB, United States District Court, District of Kansas.

▣ King & Greisen, LLP, Denver, Colorado, 2005-

**Deposed** as expert witness by plaintiffs to evaluate race discrimination in layoffs in re <u>Freeman, et al. V. Roxanne White, et al.</u>, Case No.: 05CV164, United States District Court, Colorado.

● Burr & Smith, LLP, Tampa, Florida, 2005-6

Retained as expert witness by plaintiffs to design a stratified random sample of nationwide class to estimate damages and provide evidence of commonality in re <u>Kent Dunwiddie, Grant Lincoln, and Edward Gotowala, et al. v. Central Locating Service, Ltd., Corporation</u>, Case No.: 5:04CV315-OC-10GRJ, United States District Court, Middle District of Florida.

● Bennett Bigelow & Leedom, P.S., Seattle, Washington, 2005

Retained regarding health care regulatory dispute, to evaluate the application of non-linear regression model in calculating demand for kidney dialysis facilities.

▣ Strindberg Scholnick & Chamness, LLC, Salt Lake City, Utah, 2005

**Deposed** as expert witness for plaintiffs regarding race discrimination in workforce utilization, concentration and underrepresentation, in re <u>Terry H. Fullwiley v. Union</u>

<u>Pacific Corporation and Union Pacific Railroad Company</u>, Case No. 2:04-CV-671DB, United States District Court, District of Utah, Central Division.

- White O'Connor Curry & Avanzado LLP, Los Angeles, California, 2005
    Retained as expert witness for defendants to evaluate alleged age discrimination in terminations in re <u>Harold Moore Hennesy, et al. v. Infinity Radio Inc.</u>, Arbitration No. 77116Y0035804 BEAH, American Arbitration Association, Denver, Colorado.

  Colorado Center on Law and Policy, Denver, 2004
    **Testified** as expert on computer systems and statistical modeling for plaintiffs, assessing adequacy of project management, testing, and preparation for release of the Colorado Benefits Management System (CBMS), which was designed to integrate administration of six Colorado and Federal benefit programs for all Colorado counties. Developed and presented model of caseload backlog resulting from CBMS implementation in re <u>Valerie Imani Hawthorne-Bey, et. al., v. Karen Reinerstson, Executive Director of the Colorado Department of Health Care Policies and Financing, et. al.</u>, Case No. 04-CV-7059, District Court, City and County of Denver, Colorado.

- Newman & Newman, LLP, Seattle, Washington, 2004 –
    Retained as expert witness for plaintiffs to design a sample of all Internet domain name registration changes over a two year period and to create an econometric model of the impact of the Internet domain name Wait Listing Service to be implemented by defendants in re <u>Registersite.com et al. V. Internet Corporation for Assigned Names and Numbers, Verisign, Inc., and Does 1-10</u>, Case File No. CV04-1368 ABC (CWx) 02-RB-2104 (CBS), United States District Court, Central District of California.

- King Clexton & Feola, Denver, Colorado, 2004 – 2005
    Retained as expert witness for plaintiff to analyze the impact of race and national origin on promotions and compensation in re <u>Medhanie Gebreluel Werede v. Allright Holdings Inc.</u>, Civil Action No. 01-WM-1167, United States District Court, Colorado.

- Hale Hackstaff Friesen, LLP, Denver, Colorado, 2004 – 2005
    Retained as expert witness for plaintiff to design and conduct a door-to-door survey of voters and voting behavior to determine the impact of disparate treatment of absentee ballots and to analyze evidence of voting rights violations in re <u>Jeffrey Vigil v. Carol Snyder, County Clerk, Adams County Colorado</u>, Case File No. 02-RB-2104 (CBS), United States District Court, Colorado.

▶ Nichols Kaster and Anderson, Minneapolis, Minnesota, 2003 – 2004
    **Deposed** as expert witness for plaintiff regarding race discrimination in utilization, and terminations in re <u>Jarvis Jones v. St. Paul Companies, Inc.</u>, Case File No. 02-1305, United States District Court, Minnesota.

▶ Nichols Kaster and Anderson, Minneapolis, Minnesota, 2003 – 2004
    **Deposed** as expert witness for plaintiff regarding gender discrimination in utilization and salary and other compensation in re <u>Susan M. Veeder v. Cargill, Incorporated</u>, Civil No. 02-1711 (PAM/RLE), United States District Court, Minnesota.

  Killmer and Lane LLP, Denver, Colorado, 2003 – 2004
    **Testified** for defendant regarding expert report analyzing race, ethnic, and age composition of the Juror Pools and bias in jury selection process in re <u>People of the State of Colorado v. Dante Lamar Owens</u>, Case No. 98-CR-2729, District Court, Arapahoe County, Colorado.

  DeFranco & Allen, LLC, Boulder, Colorado, 2003 – 2004
    **Testified** for defendant as expert witness regarding race, ethnic, and age composition of the Juror Pools in Arapahoe County, Colorado. Constructed model of jury selection process revealing systemic bias in re <u>People of the State of Colorado v. Trevon Washington</u>, Case No. 98-CR-2459, District Court, Arapahoe County, Colorado.

  Thomas Feldman, Denver, Colorado, 2002 – 2004

**Testified** as expert witness for plaintiff to evaluate discrimination in layoffs related to filing worker's compensation claims in re <u>Denise J. Welsch v. Sundyne Corporation,</u> Civil Action No. 02-Z-468 (BNB), United States District Court, Colorado.

▶ Nichols Kaster and Anderson, Minneapolis, Minnesota, 1998 – 2003

**Deposed** as expert witness for plaintiff to evaluate race and ethnic discrimination in hiring, utilization, promotions, and salary in re <u>Maria Garcia, et al. V. Viratec Thin Films, Inc.,</u> Civil Number 01-1978 MJD/JGL, United States District Court, Minnesota.

▶ King Clexton & Feola, Denver, Colorado, 2002 – 2003

**Deposed** as expert witness for plaintiffs to analyze the impact of race and national origin on promotions and compensation in re <u>Solomon Goitom, Amune D. Meskele, Fowsi Ali, and Omar Nur v. Allright Holdings, Inc.,</u> Civil Action No. 01-WM-1353 (CBS), United States District Court, Colorado.

Johnson, Blakely, Pope, Bokor, Ruppel & Burns, P.A., Tampa, Florida, 2001 –

**Testified** as expert witness for plaintiff to evaluate the impact of race on the quality of education and the relative impacts of poverty and race in re <u>William Crowley v. The Pinellas County School Board, et al.,</u> Case No.00-005667-CI-021, Circuit Court of Sixth Judicial Circuit, Pinellas County, Florida.

Tegtmeier, Frank & Jones, LLC, Colorado Springs, Colorado, 2001

**Testified** regarding expert report for defendant analyzing race, ethnic, and age composition of the Qualified Jury Panel and bias in jury selection process in re <u>U.S.A. v. Rice,</u> United States District Court, Colorado.

Gerash, Prugh & Gerash, L.L.C., Denver, Colorado, 2001

**Testified** regarding expert report for defendant analyzing race, ethnic, and age composition of the Qualified Jury Panel and bias in jury selection process in re <u>U.S.A. v. Carl Kenneth Kabat,</u> Case No. 00-CR-385-N, United States District Court, Colorado.

● Research Triangle Institute, Research Triangle Park, North Carolina, 2000 – 2001
Center for Disease Control, Washington, D.C.

**Retained** to lead project to analyze large and detailed national probability sample and compute statistical estimates and variances for incidence, prevalence, and total costs in *Cost Study of Intimate Partner Violence Against Women* being prepared for congress, and to conduct independent evaluation of the cost report.

● Register Machine Learning Technologies, Inc., Littleton, Colorado, 2000 – 2001

**Retained** to develop algorithms applying probability theory to improve performance of advanced genetic programming computer application.

Kummer Kaempfer Bonner & Renshaw, Las Vegas, Nevada, 2000 – 2004

**Deposed and testified** as expert witness for plaintiff on the impact of race in hiring and promotions in re <u>Jordan v. County of Clark and Clark County Department of Aviation,</u> Case No. CV-S-99-0688-HDM (RJ), United States District Court, Nevada.

● Gerash, Prugh & Gerash, LLC., Denver, Colorado, 1999 – 2001

**Prepared** expert report for defendant analyzing race, ethnic, and age composition of the Qualified Jury Panel and bias in jury selection process in re <u>U.S.A. v. Lawrence Sposato et al.,</u> Case No. 99 CR 232-S, United States District Court, Colorado.

● U. S. Equal Employment Opportunity Commission, Denver District Office, Colorado, 1999 – 2001

**Retained** to analyze the existing model used to estimate labor market availability for a large number of store locations, and to design a corrected model; evaluated the impact of racial discrimination in hiring, and the estimated the resulting damages.

▶ Zarlengo & Kimmell, LLC, Denver, CO, 2000

**Deposed** as expert for plaintiff on the impact of race on compensation and promotions at PacifiCare between 1997 and 1998 in re <u>Antoinette Ingram v. FHP Health Care/PacifiCare,</u> Case No. 98 BP 2795, United States District Court, Colorado.

▶ Holland & Hart LLP, Denver, Colorado, 2000
  **Deposed** as expert for defendant to evaluate alleged age discrimination in layoffs in re Hennesy, et al. v. Gates Rubber Company, Civil Action No. 99-M-1787, United States District Court, Colorado.

● Goldstein and Dodge, Denver, Colorado, 2000
  Submitted report assessing the bias in Division Independent Medical Examinations performed for the Division of Workers Compensation.

● Isaacson, Rosenbaum, Woods & Levy, P.C., Denver, Colorado, 1999 – 2000
  Retained as expert witness for plaintiff to evaluate ethnic and gender discrimination in hiring, promotions and terminations in re Nuvia Rodriguez v. Greyhound Lines, Inc., Civil Action No. 99-N-1596, United States District Court, Colorado.

● The Leventhal Law Firm, P. C., Denver, Colorado, 1999
  Submitted affidavit for plaintiff testifying to the limitations of the studies relied upon by defendant experts who discounted the possibility that injury resulted from rear-end collision, in re Czeslawa Sosnowska v. Kimberlee Hrbek Smith, Case No. 97CV1400, Denver District Court, Colorado.

● Feiger & Collison, P.C., Denver, Colorado, 1999 –
  Retained as expert witness for plaintiff to evaluate gender discrimination in promotions and terminations in re Blasio, et al. v. United Parcel Service, Case No. 98-M-1709, United States District Court, Colorado.

● Pacey Economics, Boulder, Colorado, 1999
  Retained to design and analyze samples of properties to be appraised in south Globeville neighborhood to estimate total property value for settlement of damages from heavy metals pollution from smelter.

● Collect America, Ltd., Denver, Colorado, 1999
  Retained to design and analyze samples of collections to be audited for approval of IPO.

● Nichols Kaster and Anderson, Minneapolis, Minnesota, 1998 –
  Retained as expert witness for plaintiff to evaluate race and ethnic discrimination in promotions and salary in re Augustine C. Crawford et al. v. Ceridian Corporation, Computing Devices International and General Dynamics Information Systems, Civil Number 97-2634, United States District Court, Minnesota.

● Center for Policy Research, Denver, Colorado, 1998 – 2000
  Retained as consultant on survey execution, weighting, and estimation for a large and detailed national probability sample for the National Violence Against Women survey; conducted sensitivity analyses and theoretical explication of the impact of sample weighting and revised methodology report throughout review by the Center for Disease Control.

  Curtis L. Kennedy, Denver, Colorado, 1997 – 2000
  **Testified and deposed** as expert witness for plaintiffs concerning alleged age discrimination in re James R. Henry v. US WEST, Inc. et al., Civil Action No. 96-N-724.United States District Court, Colorado.

● Boulder Police Department, Boulder, Colorado, 1998 – 1999
  Retained to evaluate probability associated with physical and circumstantial evidence, resulting in an unprecedented technique for identification of shot-shell pellet evidence in Case No. P83-7907, homicide of Sidney Wells.

▶ Mohr, Hackett, Pederson, Blakely, Randolph & Haga, P.C., Phoenix, Arizona, 1997 – 1999
  **Deposed** as expert witness for plaintiffs concerning alleged age discrimination in re Jeney v. Quaker Oats, Civil Action No. CIV 96-0822-PHX-RCB. Retained as expert witness concerning age discrimination in re Gentile v. Quaker Oats, Coleman v. Quaker Oats, Tallariti v. Quaker Oats, and Russell v. Quaker Oats and Christenson v. Quaker Oats.

- Miller, Lane, Killmer & Greisen, LLP. Denver, Colorado, 1998
  Retained as expert witness for plaintiff to evaluate race and ethnic discrimination in employment decisions in re Visor et al, v. Sprint/ United Management Company, Case Number 96-K-1730, U.S. District Court, Colorado.
- Johnson, Blakely, Pope, Bokor, Ruppel & Burns, P.A., Tampa, Florida, 1997
  Retained as expert witness for plaintiff to evaluate gender discrimination in allocation of stock option plan in re Gosche v. West Publishing Company, Case No. 97-Z-1954, U.S. District Court, Colorado.
- Johnson, Blakely, Pope, Bokor, Ruppel & Burns, P.A., Tampa, Florida, 1997 –
  Retained as expert witness for plaintiff to evaluate gender discrimination in allocation of stock and constructed econometric model of resulting losses  in re Patricia Winn Carter and Maxine M. Jones, et al. v. West Publishing Company, Case No. 97-2537-CIV-T-26A, U.S. District Court, Middle District of Florida.

  Colorado Lawyers Committee, Denver, Colorado, 1997
  **Testified** as expert witness for plaintiffs concerning residency in land title dispute in re Espinoza v. Taylor, Case No. 81-CV-5, Culebra County District Court.
- Jefferson County Department of Human Services, 1997
  Retained to review the implementation of the NAOMI computer system at the Jefferson County Department of Human Services in response to persistent failures in prior launch of the system; the NAOMI system was used by most or all caseworkers in Jefferson County to do CWEST submissions only, but had been designed to integrate casework for multiple programs related to child welfare.  Authored report analyzing failures in the prior launch of NAOMI, and submitted recommendations for disciplined implementation.
- Colorado Department of Human Services, 1997
  Retained to develop computer programs to analyze recidivism and issues relating to the quality of child welfare using data in CWEST, the Child Welfare information system for Colorado.
- Roman, Benezra, & Culver, Denver, Colorado, 1997
  Retained as expert witness for plaintiffs concerning gender and ethnic discrimination claim resulting from terminations in re Chacon v. Public Service Company of Colorado.
- ▣ Fox & Robertson, P.C., Denver, Colorado, 1997
  **Deposed** as expert witness for plaintiff to design and conduct a public survey to project number of persons who use wheelchairs that are denied access to retail stores in re CCDC et al. v. Campbell-Ritter Corp. et al., 96-WY-2490-AJ, CCDC et al. v. AnnTaylor Stores Corp. et al., 96-WY-2491-AJ, CCDC et al. v. Nine West Group, Inc. et al., 96-WY-2492-AJ, and CCDC et al. v. Hermanson Limited Partnership I, 96-WY-2493-AJ, United States District Court, Colorado.
- ▣ Holland & Hart, Denver, Colorado, 1997
  **Deposed** as expert witness for defendant concerning alleged age discrimination in re Ronald Kirkland v. Safeway Inc., 96-CV-0264-J, United States District Court, Colorado.
- Roman, Benezra, & Culver, Denver, Colorado, 1996 – 2000
  Retained as expert witness for plaintiffs concerning age discrimination claim resulting from layoffs in re Vaszlavik et al. v. Storage Technology Corporation.
- Peacock & Myers, Albuquerque, New Mexico, 1996
  Retained in trademark infringement litigation to construct an econometric model of variable costs associated with production in re Rogers, et al. v. Legin, et al.
- Holland & Hart, Cheyenne, Wyoming, 1996
  Retained as expert witness for defendant concerning computation of lost earnings and age discrimination claim resulting from reduction in force in re David Moffat v. Amoco Corporation, Civil Action No. 95-CV-242-D, United States District Court, Wyoming.

- Mineral Management Services, U. S. Department of Interior, Denver, Colorado, 1996
  Retained to develop sampling plan, statistical algorithms and software to audit target selection and estimate royalty underpayment for statistical billing, and to compute median weighted gas valuation index.
- U. S. Department of Justice, District of Colorado, 1996
  Retained as expert witness for defendant concerning claim of age and gender discrimination in promotions in re Edward F. Craig, Jr. v. Hazel R. O'Leary, Civil Action No. 93-K-1828, United States District Court, Colorado.
- Gerash, Robinson & Miranda, P. C., Denver, Colorado, 1995
  Prepared expert report analyzing ethnic, gender, and age composition of the Qualified Jury Panel and bias in jury selection process in re U.S.A. v. Hampton, 95-CR-253-M, United States District Court, Colorado.
- ▶ Holland & Hart, Cheyenne, Wyoming, 1995
  **Deposed** as expert witness for defendant concerning age and ethnic discrimination claim resulting from reduction in force in re Robert Nicol v. Amoco Corporation, Civil Action No. 95-CV-115-D, United States District Court, Wyoming.
- Plaintiff Employment Lawyers Association, Denver, Colorado, 1995
  Conducted seminar on *Using Statistics to Prove Disparate Impact.*
- Jeffery Menter, Greenwood Village, Colorado, 1995
  Computed present value of lost earnings in re Michael Marsh v. Delta Air Lines, Inc.
- ▶ Bart Rice, P.C., Englewood, Colorado, 1995
  **Deposed** as expert for plaintiffs regarding age bias in severances in re Mary Fields et al. v. Information Handling Services Inc., Civil Action No. 95-B-516, United States District Court, Colorado.
- Mineral Management Services, U. S. Department of Interior, Denver, Colorado, 1995
  Programmed method for aggregating transactions and computing median weighted gas valuation index; designed weighted, multi-stage, proportional sampling strategy for validating index using ratio estimation.
- Colorado Department of Social Services, Implementation Assistance Committee, 1995
  Retained to evaluate sampling strategy and survey analysis for measuring compliance with settlement agreement in re L.P.M., et al. by their next friend David Littman v. Roy Romer and Karen Beye, Civil Action No. 94-M-1417, United States District Court, Colorado.
- Mineral Management Services, U. S. Department of Interior, Denver, Colorado, 1995
  Authored report on the application of statistical sampling to audit target selection and royalty billing; programmed automated routines for designing the required samples, randomly sampling royalty transactions, and computing estimated underpayment.
- Macon Cowles & Associates, Boulder, Colorado, 1995
  Retained to analyze employee records for evidence of ethnic bias in promotions at the Denver Mint in re Joe Sanchez v. Lloyd Bensten, Civil Action No. 94-Z-1400.
- Mineral Management Services, U. S. Department of Interior, New Orleans, Louisiana, 1995
  Presented findings regarding methods for measuring gas, oil, and mineral royalty payment compliance and billing royalty underpayments based on statistical sampling to State and Tribal Audit Committee Conference.
- Sears, Anderson & Swanson, Colorado Springs, Colorado, 1994
  Evaluated disparities in salaries using multivariate regression.
- Holland and Hart, Denver, Colorado, 1993
  Consulted regarding discriminatory impact of investigative stops in re Irvin v. Sungailia, et. al., Civil Action No. 93-M-1551.
- ▶ Paul A. Baca, Denver, Colorado, 1993 – 1994

**Deposed** regarding disparate impact of promotional practices of Denver Police Department in re <u>Humphries v. Belo</u>, Civil Action No. 93-N-2731.

- Teamsters Local Union No. 435, Denver, Colorado, 1993 – 1994
  Analyzed discipline and termination policy and provided expert report for arbitration involving Supervalu Inc.
- Children's Legal Clinic, Denver, Colorado, 1993 – 1994
  Consulted on survey design of judges and guardians <u>ad litem</u>, and designed program for monitoring guardian <u>ad litem</u> representation of children in dependency and neglect hearings in the Denver Juvenile Court.
- Robinson, Waters, O'Dorisio and Rapson, Denver, Colorado, 1993 – 1994
  Retained as expert to analyze class-wide age discrimination in terminations at Martin Marietta Corporation Astronautics Group for consolidated cases in re <u>Marvin Wilkerson, et. al. v. Martin Marietta Corporation</u>, Civil Action No. 91-S-2078, United States District Court, Colorado.
- Donald P. MacDonald, Denver, Colorado, 1993 – 1994
  Consulted concerning alleged age discrimination in terminations in re <u>Ken Fortner v. Halliburton Energy Services</u>.
- Reginald H. Martin & Associates, Denver, Colorado, 1993 – 1994
  Retained to design statistical method for measuring gas, oil, and mineral royalty payment compliance for the Mineral Management Service of the United States Department of Interior, and to design and analyze methods for billing royalty underpayments based on statistical sampling.
- Serge L. Herscovici, Littleton, Colorado, 1993
  Consulted concerning alleged gender discrimination in re <u>Elizabeth Ponder v. Metromedia</u>.
- Rothgerber, Appel, Powers & Johnson, Denver, Colorado, 1993
  Retained as consultant on alleged age discrimination in terminations in re <u>Backlund et. al. v. Gates Corporation</u>.
- Pulmonary Consultants, Denver, Colorado, 1993
  Reviewed analyses of two studies of dust exposure and pulmonary function.
  Colorado Lawyers Committee, Voting Rights Task Force, Denver, Colorado, 1993 – 1994
  Conducted study of minority voting patterns in current and revised House District 60 using ecological regression and homogeneous case analysis; **deposed and testified** as expert witness in voting rights litigation in re <u>Jennie Sanchez, et. al. v. Colorado</u>, Civil Action No. 93-S-963, United States District Court, Colorado.
- Serge L. Herscovici, Littleton, Colorado, 1993
  Retained as expert to prepare analysis of age discrimination in departmental terminations in re <u>Mildred M. Pittman, et. al. v. Martin Marietta Corporation</u>, Civil Action No. 92-M-1557, United States District Court, Colorado.
- World Gaming Corporation, Las Vegas, Nevada 1992 – 1994
  Computed probabilities and payoffs for new casino game.
- ▣ Paul A. Baca, Denver, Colorado, 1992 – 1994
  **Deposed** as expert on ethnic discrimination in promotions in re <u>Rodriquez, et. al. v. Denver Sheriff's Department, et. al.</u>, Civil Action No. 92- -2335, United States District Court, Colorado.
- Robinson, Waters, O'Dorisio and Rapson, Denver, Colorado, 1992 – 1993
  Retained as expert to prepare analysis of age discrimination in departmental terminations in re <u>Marvin Wilkerson, et. al. v. Martin Marietta Corporation</u>, Civil Action No. 91-B-2078, United States District Court, Colorado.
- Colorado Lawyers Committee, Foster Care Task Force, 1992 – 1994

Retained as expert consultant to analyze Foster Care Review database and prepared issues analysis in re <u>L.P.M., et. al. by their next friend David Littman v. Roy Romer and Karen Beye</u>, Civil Action No. 94-M-1417, United States District Court, Colorado.

- Causey, Demgen & Moore Inc., Denver, Colorado, 1992
  Designed stratified sample of inventory for Tattered Cover Bookstore audit.
- ▣ Robinson, Waters, O'Dorisio and Rapson, Denver, Colorado, 1992
  **Deposed** as expert concerning analysis of age discrimination in departmental terminations in re <u>Alivan Rea, et. al. v. Martin Marietta Corporation</u>, Civil Action No. 91-S-1242, United States District Court, Colorado.
- Kelly, Haglund, Garnsey & Kahn, Denver, Colorado, 1992 – 1993
  Retained as expert and prepared offer of proof concerning congressional redistricting in re <u>Martinez, et. al. v. Romer</u>, Civil Action No. 91-C-1972, United States District Court, Colorado.
- ▣ Robinson, Waters, O'Dorisio and Rapson, Denver, Colorado, 1992
  **Deposed** as expert in preparation of lost-earnings analyses for termination with alleged age and ethnic discrimination in re <u>Chan v. Apache Oil Corporation</u>, Civil Action No. 90-M-1898, United States District Court, Colorado.
- Lundy Foundation, Denver, Colorado, 1992
  Designed and analyzed survey of AIDS/ARC service providers and users and authored survey report.
- Colorado Lawyers Committee, Voting Rights Task Force, Denver, 1992
  Conducted model study of minority voting patterns in Denver Colorado using ecological regression. Designed Colorado State House District creating a minority opportunity district and prepared expert demographic analysis in re <u>Reapportionment of the Colorado General Assembly</u>, Case No. 92 SA 19, Supreme Court, State of Colorado.
- ▣ Robinson, Waters, O'Dorisio and Rapson, Denver, Colorado, 1991
  **Deposed** as expert witness in preparation of lost earnings analyses for termination with alleged age discrimination in re <u>Mark Bremmer v. Martin Marietta Corporation</u>, Civil Action No. 90-Z-828, United States District Court, Colorado.

David A. Lane, Esq, Denver, Colorado, 1989
Analyzed ethnic and age composition of the Qualified Jury Wheel and **testified** as expert concerning age bias in jury selection process in re <u>U.S.A. V. Laymon</u>, 89-CR-113, United States District Court, Colorado

Colorado Professional Black Firefighters, Paul A. Baca, Esq., 1989
Analyzed results of Denver Fire Department promotional exam for racial or ethnic bias and **testified** as an expert witness at the preliminary injunction hearing in re <u>Fuller V. Cisneros</u>, United States District Court.